The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HONG WANG, et al.,

               Plaintiffs,

      v.

MICHAEL CHERTOFF, et al.,

               Defendants.

CASE NO. C07-154RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on cross-motions for summary judgment (Dkt. ## 7, 8).  Neither Plaintiffs nor Defendants have requested oral argument, and the court finds the motions suitable for disposition on the basis of the parties' briefing and supporting evidence.  For the reasons stated below, the court GRANTS Plaintiffs' motion (Dkt. # 7), DENIES Defendants' motion (Dkt. # 8), and mandates further action by Defendants as described at the conclusion of this order.

## II.  BACKGROUND

Plaintiff Hong Wang ("Wang") was born in the People's Republic of China and has been lawfully residing in the United States since September 2000.  He is currently living and working in the United States under a temporary visa.  Wang is married to Plaintiff Sufen Shang, and they have a daughter, Plaintiff Yuxin Wang.  On December

ORDER – 1

16, 2004, Wang filed an I-485 application to adjust to permanent resident status.  Shang and Yuxin Wang have filed applications as derivative beneficiaries, and their applications will not be adjudicated until Wang's application has been adjudicated.

Plaintiffs now seek to compel Defendants to act on their applications.  Defendant Michael Chertoff is the Secretary of the Department of Homeland Security ("DHS").  Defendant Emilio T. Gonzalez is the Director of the United States Citizenship and Immigration Service ("USCIS"), the agency within DHS with responsibility for adjudicating Plaintiffs' applications.  Defendant Gerard Heinauer is Director of USCIS's Nebraska Service Center, where Plaintiffs' applications are pending.  Defendant Michael Mukasey is the Attorney General of the United States, an agency of which the Federal Bureau of Investigation ("FBI") is a subdivision.  Under an arrangement whose details are not clear from the record, the FBI is responsible for conducting a portion of the background investigation relevant to adjudicating Plaintiffs' applications.  Defendant Robert S. Mueller is the Director of the FBI.  The court will refer to the Defendants collectively as "the Government," except where clarity demands otherwise.

It is undisputed that the sole justification for the delay in processing Wang's application is that USCIS has not yet received the results of his FBI "name check."  Gov't Mot. at 1.  A "name check" is a (presumably) computerized search of an applicant's name against FBI investigative databases.  Jacobson Decl. ¶ 10.  USCIS requested a name check for Wang on December 23, 2004, but has received no response from the FBI.  *Id*. at ¶ 17.  USCIS submitted Shang's name check on December 23, 2004, and the FBI completed the check by June 5, 2006.  *Id*.  USCIS submitted Yuxin Wang's name check on December 23, 2004, and the FBI completed the check by December 30, 2004.  *Id*.  As of December 14, 2007, USCIS declared on its website that it was adjudicating employment-based I-485 applications filed before April 24, 2007.  Pltfs.' Mot. Ex. 3.

ORDER – 2

Thus, while the INS publicly states that it adjudicates I-485 applications within a year, Wang's application has been pending more than three years.

### III.  ANALYSIS

Plaintiffs seek summary judgment compelling USCIS to adjudicate their I-485 applications.  On a motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party must show that there is a genuine issue of fact for trial.  *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).  When confronted with purely legal questions, the court does not defer to the non-moving party.

**A.**     **The Court Has Jurisdiction to Compel Action on Plaintiffs' Applications.**

Plaintiffs bring this action under 28 U.S.C. § 1361, which grants district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States to perform a duty owed to the plaintiff."  Plaintiffs also assert jurisdiction under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 551-706.  Although the APA itself does not confer subject matter jurisdiction, the general grant of jurisdiction to resolve federal questions under 28 U.S.C. § 1331 is, in conjunction with the APA, sufficient to confer jurisdiction over a challenge to federal

ORDER – 3

agency action.  *Proyecto San Pablo v. I.N.S.*, 189 F.3d 1130, 1136 n.5 (9th Cir. 1999);

*ANA Int'l, Inc. v. Way*, 393 F.3d 886, 890 (9th Cir. 2004).

The Government contends that 8 U.S.C. § 1252(a)(2)(B)(ii) strips the court of

jurisdiction.  Section 1252(a)(2)(B) provides as follows:

> [N]o court shall have jurisdiction to review –
>
> (i)   any judgment regarding the granting of relief under section . . . 1255
>       of this title, or
>
> (ii)  any other decision or action of the Attorney General or the Secretary
>       of Homeland Security the authority for which it is specified under
>       this subchapter to be in the discretion of the Attorney General or the
>       Secretary of Homeland Security . . . .

The Government argues that decisions regarding adjustment of status are discretionary

and thus, unreviewable under § 1252(a)(2)(B)(ii).[1]  The statute governing adjustment of

status provides as follows:

> The status of an alien who was inspected and admitted or paroled into the
> United States or the status of any other alien having an approved petition
> for classification as a VAWA self-petitioner may be adjusted by the
> Attorney General, in his discretion and under such regulations as he may
> prescribe, to that of an alien lawfully admitted for permanent residence if
> (1) the alien makes an application for such adjustment, (2) the alien is
> eligible to receive an immigrant visa and is admissible to the United States
> for permanent residence, and (3) an immigrant visa is immediately available
> to him at the time his application is filed.

8 U.S.C. § 1255(a).[2]

---

[1]The Government also relies on a provision of the APA as a basis for stripping the
court of jurisdiction.  5 U.S.C. § 701(a)(2) (stating that APA does not apply to "agency action
committed to agency discretion by law.").  The court need not consider this provision, as the
§ 1252(a)(2)(B)(ii) bar applies more broadly against the exercise of jurisdiction than the APA
bar.  *ANA Int'l Inc. v. Way*, 393 F.3d 886, 890-91 (9th Cir. 2004) ("[A]ny determination that
passes the more stringent test [under § 1252(a)(2)(B)(ii)], remaining subject to judicial review,
also passes the lower bar of the APA test.").

[2]Although 8 U.S.C. § 1255(a) vests authority in the Attorney General, subsequent
enactments have transferred the authority to the Secretary of the DHS, and to the USCIS as
the Secretary's delegate.  *See*, *e.g.*, 6 U.S.C. § 271(b)(5) (transferring power from former

ORDER – 4

The court holds that §1252(a)(2)(B)(ii) does not strip the court of jurisdiction over this action. The "strong presumption in favor of judicial review of agency action," *I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001), the nature of Plaintiffs' challenge, and the text of §1252(a)(2)(B)(ii) compel this conclusion. Section 1255(a) specifies that *the authority to adjust the status of an applicant* is within the discretion of USCIS. Were Plaintiffs challenging a USCIS denial of their I-485 applications, § 1252(a)(2)(B) might well prohibit judicial review.[3] Instead, Plaintiffs challenge USCIS's failure to act on their applications within a reasonable time. As to this issue, § 1255(a) is silent, as are other statutes. Section 1252(a)(2)(B)(ii) removes jurisdiction only over acts "the authority for which is specified under [8 U.S.C. §§ 1151-1378] to be in the discretion of" the Government. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 688 (9th Cir. 2003) (quoting § 1252(a)(2)(B)(ii)) (bracketed language in original). The court must construe this provision narrowly, and not "expand[] it beyond its precise language." *ANA Int'l*, 393 F.3d at 891 (quoting *Wong v. United States INS*, 373 F.3d 952 (9th Cir. 2004)). Section 1255(a) does not specify that the Government has discretion over the pace of adjudicating I-485 applications. Neither § 1255(a) nor any other statute provides the "specified" discretionary authority over the pace of adjudicating applications for adjustment of status that § 1252(a)(2)(B)(ii) demands. *See Spencer*, 345 F.3d at 690.

In deciding that it has jurisdiction in this challenge to the pace of adjudicating Plaintiffs' I-485 applications, the court notes that no circuit court of appeals has reached

---

Immigration and Naturalization Service to USCIS); 6 U.S.C. § 557.

[3]Because the question is not before it, the court does not decide whether § 1252(a)(2)(B) removes jurisdiction over a denial of an I-485 application. The court notes that the Ninth Circuit has yet to decide whether § 1252(a)(2)(B) applies outside the context of removal proceedings. *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 692 (9th Cir. 2003); *ANA Int'l*, 393 F.3d at 891.

ORDER – 5

this issue, but dozens (if not hundreds) of district courts have.  The court is indebted to

the sound analysis of the other courts within this district who have considered this

question, all of whom have concluded that § 1252(a)(2)(B)(ii) does not bar judicial

review.  *See*, *e.g.*, *Huang v. Gonzales*, No. C07-96RSM, 2007 U.S. Dist. LEXIS 32276

(W.D. Wash. May 2, 2007); *Chen v. Heinauer*, No. C07-103RSL, 2007 U.S. Dist. LEXIS

36661 (W.D. Wash. May 18, 2007); *Chen v. Chertoff*, No. C06-1760Z, 2007 U.S. Dist.

LEXIS 64664, at *6 (W.D. Wash. Aug. 30, 2007) (noting adoption of jurisdictional

analysis of *Huang*).  Like the courts in this district, courts in the Northern District of

California have been unanimous in reaching the same conclusion.  *See Dong v. Chertoff*,

513 F. Supp. 2d 1158, 1163 & n.7 (N.D. Cal. 2007) (reviewing nine prior decisions).

These courts place themselves in the clear majority of district courts within the Ninth

Circuit who have considered the issue.  *See*, *e.g.*, *Wang v. Chertoff*, No. 07-77-TUC-

GEE, 2007 U.S. Dist. LEXIS 87419 (D. Ariz. Nov. 27, 2007); *Liu v. Chertoff*, No. CV-

06-1682-ST, 2007 U.S. Dist. LEXIS 65687 (D. Or. Aug. 29, 2007); *Sun v. Chertoff*, No.

07cv152 BTM (BLM), 2007 U.S. Dist. LEXIS 62969 (S.D. Cal. Aug. 27, 2007); *Sun v.

Gonzales*, No. CV-07-18–AMJ (E.D. Wash. Nov. 11, 2007); *but see Li v. Chertoff*, 482

F. Supp. 2d 1172 (S.D. Cal. 2007); *Chen v. Chertoff*, No. CIV S-07-93 GEB EFB PS,

2007 U.S. Dist. LEXIS (E.D. Cal. Aug. 20, 2007).  Finally, while the court does not

purport to have conducted a thorough census, it appears that the majority of district courts

nationwide have also rejected the Government's challenge to jurisdiction over the pace of

I-485 applications.  *Compare Soliman v. Gonzales*, No. 07-CV-682, 2007 U.S. Dist.

LEXIS 89379, at *12 (E.D. Pa. Dec. 6, 2007) ("[T] majority of federal courts that have

considered similar claims have found that subject matter jurisdiction exists . . . ."), *with

Torres v. Chertoff*, No. 1:07-cv-01649-WSD, 2007 U.S. Dist. LEXIS 88812, at *19 (N.D.

ORDER – 6

Ga. Nov. 30, 2007) (stating that "majority of courts" have declined jurisdiction over actions to compel action on adjustment of status application).

Although the court need go no further in deciding that § 1252(a)(2)(B)(ii) does not divest it of jurisdiction in this matter, the court notes a potential alternate basis for holding the provision inapplicable. The *Spencer* court interpreted § 1252(a)(2)(B)(ii) to apply only to acts that were "matters of pure discretion, rather than discretion guided by legal standards." 345 F.3d at 690. Although § 1255 does not require the Government to adopt regulations for reviewing applications for adjustment of status, it appears to require the Government to adhere to such regulations where they exist. 8 U.S.C. § 1255(a) (requiring Attorney General to act "in his discretion *and* under such regulations as he may prescribe") (emphasis added). As the court will discuss further, *see infra* Part III.B.1, III.B.2 n.6, USCIS has adopted regulations requiring it to adjudicate applications for adjustment of status. For that reason, it is not certain that its obligations with respect to processing adjustment of status applications are discretionary within the meaning of § 1252(a)(2)(B)(ii) as construed in *Spencer*.

**B.    Plaintiffs Are Entitled to Relief as a Matter of Law.**

The court now examines the merits of Plaintiffs' claims. Although both 28 U.S.C. § 1361 and the APA provide potential avenues for relief, those avenues are "essentially the same," and the court focuses on Plaintiffs' claim under the APA. *Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) (declining to engage in separate analysis of claims under 28 U.S.C. § 1361 and APA).

**1.    The USCIS Defendants Have a Mandatory Duty to Act on Plaintiffs' Applications.**

To earn relief under the APA, Plaintiffs must show a nondiscretionary duty to act, and, in a case where the challenge is to a delay in acting, must show that the delay is

ORDER – 7

unreasonable.  *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S. 55, 63 & n.1 (2004); 5 U.S.C. § 706(1) (authorizing courts to "compel agency action unlawfully withheld or unreasonably delayed").

USCIS has enacted regulations that establish its mandatory duty to act on Plaintiffs' applications.  Most prominently, one regulation declares that "an applicant *shall* be notified of the decision of the director [on an application for adjustment of status] and, if the application is denied, the reasons for the denial."  8 U.S.C. § 245.2(a)(5)(i) (emphasis added).  Although this regulation has no relevance in the court's discussion of the applicability of § 1252(a)(2)(b)(ii), which concerns only *statutory* bases for discretion, *Spencer*, 345 F.3d at 691, it is dispositive of the court's analysis of the application of the APA.  *See SUWA*, 542 U.S. at 65 (noting that agency regulations with force of law can serve as basis for mandatory duty underlying APA action).

There is no evidence, however, that Defendants not connected with USCIS have a mandatory duty to act on Plaintiffs' applications.  In particular, Plaintiffs point to no source of a duty of the FBI to process name checks.  For that reason, the court holds that neither FBI Director Mueller nor Attorney General Mukasey are proper Defendants in this action.

### 2.     USCIS's Delay in Adjudicating Wang's Application is Unreasonable.

Having established USCIS's mandatory duty to act upon Plaintiffs' applications, it remains to decide *when* it must act.  Without a statutory or regulatory timetable, the APA directs agencies to resolve applications reasonably quickly.  5 U.S.C. § 555(b) ("With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.").  The court may consider the following six-factor test in determining whether the Governments' delay is unreasonable:

ORDER – 8

(1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Independence Mining Co.*, 105 F.3d at 507 n.7 (citing *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984)).

As to the first of these so-called "*TRAC* factors," the court finds no "rule of reason" guiding the Government's processing of Wang's application.  The Government asserts that name checks are processed in "first in, first out" fashion.  Gov't Mot. at 5.  A comparison of the one-week processing of Yuxin Wang's name check to Wang's still-pending name check quickly disproves this assertion.  The "rule" appears to be that once a name check is forwarded to the FBI, USCIS abdicates responsibility for the name check.  Where USCIS has been assigned the mandatory duty to adjudicate adjustment applications, this policy cannot be considered a "rule of reason."[4]

The second *TRAC* factor requires consideration of any Congressional expression of a "timetable or other indication of the speed with which it expects the agency to proceed."  Congress has expressed its "sense" that "the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of

---

[4]In a single sentence of argument, Plaintiffs contend that USCIS's delegation of responsibility for name checks to the FBI is *ultra vires*.  Pltfs.' Mot. at 14.  The Government responds to this assertion in a footnote, pointing out that Plaintiffs have not cited authority to support their position.  Gov't Mot. at 14 n.5.  The court declines to consider the issue, as it is not sufficiently developed.

ORDER – 9

the application." 8 U.S.C. § 1571(b).[5]  Wang's application has been pending more than six times as long.

As to the third and fifth *TRAC* factors, the court cannot easily categorize the Government's delay as affecting "human health and welfare" rather than mere economic interests.  Plaintiffs cite mainly economic factors as the basis for their desire to adjust status.  Pltfs.' Mot. at 10-11.  Because Wang retains the ability to live and work in this country with his spouse and daughter, it is not clear how the delay affects his health or welfare.  The delay, however, slows the process of obtaining permanent residence and, ultimately, citizenship.  Plaintiffs claim occupational stress, travel difficulties, and other burdens flow directly from the delay in processing their applications.  Pltfs.' Mot. at 10.  Some of these burdens are economic, some pertain to human welfare.

In examining the fourth *TRAC* factor, the court must consider the effect of expediting Wang's application on other USCIS priorities.  USCIS offers evidence that expedited and priority name checks can cause delay in processing other name checks.  Gov't Mot. App. A.  While the court acknowledges this concern, it cannot deny relief to a person whose application has been unreasonably delayed merely because there are others who have perhaps also been unreasonably delayed.

Finally, the court notes that there is no evidence of an improper purpose underlying the Government's delay in this action, thus dispensing with the sixth *TRAC* factor.

---

[5]In addition to the aspirational 180-day deadline in 8 U.S.C. § 1571(b), the court notes that 8 C.F.R. § 103.2(b)(18) sets forth a detailed timetable for "withholding adjudication of a visa petition or other application if . . . an investigation has been undertaken involving a matter relating to eligibility or the exercise of discretion . . . ."  As neither party cites this regulation, the court has not relied on it in resolving these motions. *Cf. Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1166 (N.D. Cal. 2007) (relying on 8 C.F.R. § 103.2(b)(18) as basis of decision mandating action on adjustment of status application).

ORDER – 10

In addition to its consideration of the *TRAC* factors, the court considers the Government's justifications for the delay in processing Wang's application.  The justifications fall into two categories.  First, that national security and public safety concerns mandate the use of name checks.  Second, that the sheer number of name checks that the Government must process causes delays.

The court is not persuaded by the Government's attempt to justify its delay in this case by trumpeting its generalized obligation to protect public safety and national security.  The court readily acknowledges the importance of public safety and national security, but sees no connection between these concerns and this case.  Wang is living and working in the United States, and has been for almost eight years.  If Wang presents a threat to national security and public safety, the Government does not ameliorate that threat by delaying a decision on his I-485 application.  If the Government granted Wang's application for adjustment of status, it would retain a panoply of options in the event that it discovered that Wang posed a threat to national security.  It could arrest him; it could deport him.  *See Singh*, 470 F. Supp. 2d 1064, 1070 (noting Government's ability to address security threats that permanent residents pose).  If the Government is concerned about public safety and national security, it should find a way to process name checks more rapidly, thereby revealing threats to security more quickly.  The Government protects no one by delaying a decision on Wang's application while his name check languishes with the FBI.

As to the Government's second justification, evidence of the large numbers of name checks that USCIS must request raises more questions than it answers.  Despite the large number of name checks it must request, USCIS manages to process most I-485 applications in less than a year.  Pltfs.' Mot. Ex. 3.  The central question this action poses

ORDER – 11

as to Wang's application is: what is taking so long?  USCIS's citation to the large number of name checks it must request does nothing to answer this question.

The most salient feature of the Government's evidence is that there is no evidence whatsoever that explains why Wang's application has languished at USCIS for three years.  Has the FBI discovered something about Wang's background that has required years of additional investigation?  Is Wang in a category of applicants who are subjected to a more extensive name check process?  The court has no answers to these questions, because the Government has presented no evidence to answer them.  The lack of evidence explaining the delay in adjudicating Wang's application is fatal to the Government's position.

Ultimately, the court's decision regarding the reasonableness of the delay in this action requires it to balance the Government's systemic justifications against Wang's individual interests.  If the Government's justifications were truly systemic – that is, if they applied to all applicants for adjustment of status – the outcome here might be different.  Instead, some applicants receive relatively speedy adjudication, whereas others do not, and the Government does not explain why.  When an applicant has been waiting for years for adjudication, knowing that others have received decisions much more quickly, it is not enough to say, to paraphrase the Government's response: "This is the system."  The APA provides Wang with a means to challenge the system, and he has done so successfully in this case.

The court finds that there are no disputed issues of material fact, and that Wang is entitled to judgment as a matter of law.

## IV.  CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' motion for summary judgment (Dkt. # 7) and orders USCIS to issue a decision on Wang's application for

ORDER – 12

adjustment of status within 45 days of this order.  The court issues no mandate as to

Shang or Yuxin Wang, as it appears that adjudication of their applications will occur

shortly after adjudication of Wang's application.  The court will delay entry of judgment

in this action for 45 days, during which time the Government may present evidence

specific to Wang which demonstrates a reason for the delay in adjudicating his

application.  If the Government does not present such evidence, it shall file an affidavit

with the court demonstrating that it has adjudicated Wang's application in accordance

with this order, and shall also serve the affidavit on Plaintiffs.  The court DENIES the

Government's cross-motion for summary judgment (Dkt. # 8), except to the extent that it

seeks dismissal of Defendants Mueller and Mukasey.

Dated this 7th day of March, 2008.

The Honorable Richard A. Jones
United States District Judge

ORDER – 13